UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| GEOSTABILIZATION INTERNATIONAL, LLC and GEO HOLDING PARENT CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID FREISTAEDTER and ROCK SUPREMACY, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. _____ |

## VERIFIED COMPLAINT

Plaintiffs GeoStabilization International, LLC ("GSI") and Geo Holding Parent Corporation ("GHPC"), for their Verified Complaint against Defendants David Freistaedter and Rock Supremacy, LLC ("Rock Supremacy"), allege as follows:

### Parties

1. GSI is a Colorado limited liability company with its principal place of business in Commerce City, Colorado.

2. GHPC is a Delaware corporation with its principal place of business in Commerce City, Colorado.

3. Upon information and belief, Mr. Freistaedter is an individual residing at 1917 Ashfield Drive, Kingsport, TN 37664.

4. Upon information and belief, Rock Supremacy is an Oregon limited liability company with its principal place of business in Bend, Oregon.

## Jurisdiction and Venue

5. This Court has jurisdiction under 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00. For diversity purposes, GSI is a citizen of Colorado, GHPC is a citizen of Delaware and Colorado, Mr. Freistaedter is a citizen of Tennessee, and Rock Supremacy is a citizen of Oregon.

6. The Court has personal jurisdiction over Mr. Freistaedter and Rock Supremacy, as Mr. Freistaedter is a Tennessee resident who worked from GSI in Tennessee and who executed agreements with Plaintiffs while in Tennessee, and Rock Supremacy induced Mr. Freistaedter to breach contracts while he was in Tennessee. Venue is appropriate before this Court, as a substantial part of the events giving rise to these claims occurred in Tennessee and in this division of this judicial district.

## Factual Allegations

7. GSI, a wholly-owned subsidiary of GHPC, is a leading geohazard mitigation firm. GSI provides landslide and rockfall mitigation for the transportation, railroad, mining, and energy industries, as well as specialized stabilization services, such as bridge abutments, retaining walls, and compaction grouting. GSI performs services for clients in the United States and Canada.

8. Effective December 9, 2018, GSI hired Mr. Freistaedter as a Regional Engineer operating from his home-office in Kingsport, Tennessee.

9. As a condition of Mr. Freistaedter's employment with GSI, GSI required him to be bound by certain restrictive covenants. On or about November 26, 2018, Mr. Freistaedter signed an "Employment Agreement," a true and correct copy of which is filed herewith as Exhibit 1.

10. Under Section 5(b)(i) of the Employment Agreement, Mr. Freistaedter agreed:

> Employee hereby agrees, during this Employee's employment with the Company and for a period of two (2) years following the date of termination of Employee's

employment with the Company (the "Restricted Period") that Employee will not, on his own behalf or on behalf of or in connection with any person, directly or indirectly, in any capacity whatsoever (including as an employer, employee, principal, agent, joint venture, partner, stockholder or other equity older, independent contractor, licensor, licensee, franchiser, franchisee, distributor, consultant, supplier or trustee in respect of or by or through any individual, entity, partnership, company or other organization or otherwise) within the Restricted Territory (defined below) by employed by, own, manage, operate, control, or participate in the ownership, management, operation or control of, or carry on, be engaged in, permit his name to be used in connection with, have any financial or other interest in or be otherwise commercially involved in, any endeavor, activity or business which is similar to or is in competition with the Business or any part of it, or provide any products or services to any business or individual, entity or other organization engaged in the Business.

11. Under Section 5(b)(ii) of the Employment Agreement, "Restricted Territory" is "defined to include each of the United States or Canadian Provinces."

12. Under Section 5(c)(iii) of the Employment Agreement, Mr. Freistaedter agreed:

[Employee will not] except on behalf of the Company and its affiliates, induce, canvass, solicit, procure or accept the business of, or assist the inducement, canvassing or soliciting, procurement of or acceptance of the business of, any individual, entity, partnership, company or other organization that is or was a customer or client or prospective customer or client of the Company or its affiliates, with which the Company or its affiliate has an existing contract, or which has accepted or received a proposal from the Company or its affiliate, at any time within twelve (12) months prior to the date of termination of Employee's employment with the Company.

13. Section 6 of the Employment Agreement also precludes Mr. Freistaedter from disclosing or using GSI's confidential information.

14. As a Regional Engineer, Mr. Freistaedter was responsible for allocating and assigning engineering resources to GSI pursuits and projects. He reviewed engineering tasks during post-award planning, construction, and closeout. Mr. Freistaedter also supported Project Design Engineers and Regional Directors in both the region and client-sector in vetting potential projects. He worked closely with GSI clients, including providing design proposals and overseeing

project designs as work progressed. Mr. Freistaedter performed managerial-type responsibilities, such as overseeing CAD designers and others.

15. In 2023, GSI changed Ms. Freistaedter's title to Senior Engineer after eliminating regional titles.

16. At the time of his departure, Mr. Freistaedter directly reported to Jose LuQuin, Senior Engineer.

17. As part of his job, Mr. Freistaedter was trained in and utilized GSI's proprietary design-build solutions and pricing formulas.

18. Mr. Freistaedter was well compensated for his services. At the time of his resignation from GSI, he earned more than $100,000 in total yearly compensation. In addition, GSI reimbursed Mr. Freistaedter for expenses incurred associated with his engineering licensure and to attend various conferences throughout his employment.

19. GSI also gave Mr. Freistaedter stock options with GHPC, which he exercised. In connection with that arrangement, on or about December 19, 2018, GHPC and Mr. Freistaedter entered into a "Stock Option Agreement," a true and correct copy of which is filed herewith as Exhibit 2. Mr. Freistaedter also agreed to be bound by a "Joinder to GSI Parent Stockholders Agreement," a true and correct copy of which is filed herewith as Exhibit 3. A true and correct copy of the Stockholders Agreement is filed herewith as Exhibit 4.

20. Under Section 5.10(b) of the Stock Option Agreement, Mr. Freistaedter agreed that, "[d]uring the Restricted Period," defined in Section 1.1 of the Stockholders Agreement as two years after termination of his employment, he would not:

> (iii) except on behalf of the Company and its Subsidiaries and Affiliates, include, canvass, solicit, procure or accept the business of, or assist the inducement, canvassing or soliciting, procurement of or acceptance of the business of, any individual, entity, partnership, company or other organization that is a customer or

client of the Company or its Subsidiaries or Affiliates, with which the Company or its Subsidiaries or Affiliates has an existing contract, in each case, for purposes of engaging the Business; [and]

\* \* \*

(v) within the Restricted Territory (as defined below) be employed by, own, manage, operate, control or participate in the ownership, management, operation or control of, or carry on, be engaged in, permit his, her or its name to be used in connection with, have any financial or other interest in or be otherwise commercially involved in, any endeavor, activity or business which is similar to or is in competition with the Business or any part of it, or provide any products or services to any business or individual, entity or other organization engaged in the Business; provided however that nothing contained herein shall be deemed to prohibit the Optionee from acquiring as an investment not more than one percent (1%) of any class of securities of a public company. For purposes of this Agreement, the term "Restricted Territory" is defined to include (x) the United States and Canada and (y) any other jurisdiction in which the Company or its Subsidiaries and Affiliates conduct the Business during the Restricted Period.

21. "Business" is defined in Section 1.1 of the Stockholders Agreement as "the business of advertising, distributing, marketing, promoting, designing, and installing construction work pertaining to launched and drilled soils nails, micropiles, rock bolts/dowels, shotcrete, steel mesh, geosynthetically confined soils, grouting, and other products for the purpose of landslide repair, slope stabilization, erosion control, temporary and permanent shoring, rock fall mitigation, bridge, bridge abutment, box culvert and retaining wall construction/rehabilitation, settlement control, and micropile foundation improvement of existing structures, or any other business the Company or its Subsidiaries are engaged or have taken material actions towards engaging in at the relevant time of determination."

22. Mr. Freistaedter further agreed, under Section 5.10(a) of the Stock Option Agreement, not to divulge or use GHPC or its affiliates' confidential or proprietary information.

23. GSI is a third-party beneficiary of the Stock Option Agreement.

24. Over the course of his employment with GSI, Mr. Freistaedter was privy to a wealth of GSI's proprietary, confidential information. For instance, he was regularly included in high-

level management meetings in which GSI's financial performance, growth objectives, pricing structures, and proposed options of distinguishing it as a company from its competitors were discussed.

26. Mr. Freistaedter was also privy to and participated in GSI's efforts to develop new business. For instance, he was aware of GSI's confidential strategies to recruit new clients and new projects for existing clients, as well as potential projects that were not in an open-bid situation, and therefore, not available to competitors.

26. As an owner of the company, Mr. Freistaedter was also invited to owners' meetings at which time GSI discussed strategic initiatives, cash flow, GSI's budget, demand treads, hiring initiatives, and other company-specific confidential information.

27. By virtue of his employment with GSI, Mr. Freistaedter was also afforded the opportunity to interact with and develop relationships with GSI's clients. Clients associated Mr. Freistaedter with GSI's business.

28. GSI made these investments in Mr. Freistaedter's career, allowed him to be privy to its proprietary information, and allowed him to develop relationships with its clients with the expectation that he would honor his contractual commitments as set forth in the agreements.

29. GSI faces an unfair competitive disadvantage if Mr. Freistaedter is allowed to disavow his obligations set forth in the agreements.

30. On March 22, 2023, Mr. Freistaedter announced that he was resigning from GSI effective April 7, 2023.

31. Thereafter, GSI learned that Mr. Freistaedter accepted employment with Rock Supremacy. Rock Supremacy is a direct competitor of GSI. As set forth on Rock Supremacy's website, Rock Supremacy specializes in rockfall mitigation, slope stabilization, tunnel

rehabilitation, shotcrete, drilling, and landslide remediation services. *See* https://www.rocksupremacy.com/index.php/about (last accessed 6/5/23). Upon information and belief, the only services offered by Rock Supremacy that do not compete with GSI's services are soldier pile and lagging retaining wall services.

32. Under Section 5(j) of his Employment Agreement, Mr. Freistaedter was required to notify Rock Supremacy of his employment with Rock Supremacy. Mr. Freistaedter, however, chose not to do so. In fact, he initially disclosed his employment with Rock Supremacy on his LinkedIn social media page but chose to remove the affiliation shortly after GSI began its investigation.

33. On April 26, 2023, Nathan Beard, GSI's VP of Client Management, contacted Rock Supremacy's owner, Rowan Anderegg, by telephone. During the conversation, Mr. Anderegg confirmed that Mr. Freistaedter was working for Rock Supremacy, stating that he was serving in a "General Manager" capacity for the company's newly-created eastern United States division. Mr. Anderegg described the position as "[b]asically a VP doing all of the things I'm doing as the owner of the company." Mr. Anderegg further stated that Mr. Freistaedter was working from Tennessee (where he was starting an office for Rock Supremacy) and that he would be running the office, including setting up contracts, winning bid work, and "wearing all the hats of an owner." During the conversation, Mr. Beard alerted Mr. Anderegg of Mr. Freistaedter's contractual obligations to GSI.

34. On or about May 4, 2023, a GSI client contacted GSI to alert it that Mr. Freistaedter was pitching to submit a bid for the project on behalf of Rock Supremacy. The project was not an open-bid project. Instead, the client had been in discussions with GSI as a sole source project. By virtue of his employment with GSI, Mr. Freistaedter was aware of the project, and in fact, was

7
Case 2:23-cv-00059-CEA-CRW   Document 1   Filed 06/06/23   Page 7 of 10   PageID #: 7

involved with GSI's bid for the project. Thus, Mr. Freistaedter was aware of GSI's confidential information related to its bid for the project at the same time that he: (a) notified Rock Supremacy of the opportunity (which was not publicly disclosed); and (b) attempted to convince the client to do business with Rock Supremacy rather than GSI.

35. In the meantime, GSI discovered that, before returning his company laptop, Mr. Freistaedter "wiped" all of the data contained on the device.

36. GSI also discovered that, in the time period between Mr. Freistaedter's resignation email and his last day of work, Mr. Freistaedter downloaded 205 files from the company's Box portal and more than 2600 files since December 12, 2022.

37. By letters dated May 8, 2023, and May 18, 2023, true and correct copies of which are filed herewith as Exhibits 5 & 6, GSI (through counsel) notified Defendants of its expectation that Mr. Freistaedter strictly comply with his contractual obligations. True and correct copies of a response letters from Mr. Freistaedter's counsel are filed herewith as Exhibits 7 & 8.

38. As of this date, Mr. Freistaedter remains employed by Rock Supremacy and has refused to commit to honoring his contractual obligations.

### Count I: Breach of Contract

**(Alleged Against Defendant Freistaedter)**

39. Plaintiffs incorporate by reference their preceding allegations.

40. The Employment Agreement and Stock Option Agreement are binding and enforceable contracts.

41. Mr. Freistaedter has breached the Employment Agreement and Stock Option Agreement, including but not necessarily limited to soliciting one or more GSI clients and

accepting employment with a GSI competitor. His conduct evidences that he intends to continue doing so.

42. Plaintiffs face damages and irreparable harm by Mr. Freistaedter's breach of these agreements.

### Count II: Inducement of Breach

### (Alleged Against Defendant Rock Supremacy)

43. Plaintiffs incorporates by reference the preceding allegations.

44. The Employment Agreement and Stock Option Agreement are binding and enforceable contracts. Mr. Freistaedter has breached and intends to breach these agreements through his employment with Rock Supremacy.

45. Rock Supremacy has had knowledge about Mr. Freistaedter's obligations under the agreements.

46. Rock Supremacy has procured Mr. Freistaedter's breach of the agreements by virtue of hiring him in a position in which he will breach the agreements and by continuing to employ him in a role that will facilitate him breaching the agreements.

47. Rock Supremacy's inducement of Mr. Freistaedter's breach of the agreements violates T.C.A § 47-50-109, and Plaintiffs are entitled to all relief set forth under that statute.

WHEREFORE, Plaintiffs pray that this Court:

1. Enter a judgment in favor of Plaintiffs against Mr. Freistaedter for compensatory damages as a result of Mr. Crawford's breach of his Employment Agreement and Stock Option Agreement.

2. Award Plaintiffs temporary and permanent injunctive relief enjoining Mr. Freistaedter from breaching the Employment Agreement and the Stock Option Agreement and enjoining Rock Supremacy from enabling Mr. Freistaedter to breach those agreements.

3. Award Plaintiffs their attorney's fees and expenses against Mr. Freistaedter in accordance with Section 17 of the Employment Agreement.

4. Enter a judgment in favor of Plaintiffs against Rock Supremacy for compensatory damages as a result of Rock Supremacy's inducement of Mr. Freistaedter's breach of contract.

5. Enter a judgment in favor of Plaintiffs against Rock Supremacy for treble damages in accordance with T.C.A. § 47-50-109.

6. Award Plaintiffs other equitable relief to which they are entitled under the agreements and/or the law.

/s/ David L. Johnson
David L. Johnson, #18732
Butler Snow, LLP
150 Third Avenue, South, Suite 1600
Nashville, Tennessee 37201
Phone: (615) 651-6700
Fax: (615) 651-6701
David.johnson@butlersnow.com

Attorneys for Plaintiff

## VERIFICATION

I, Nathan Beard, hereby certifies under penalty of perjury that I have read the foregoing Verified Complaint that, based on my personal knowledge and investigation (including review of documents), I know the contents to be true to my knowledge, except as to matters alleged on information and belief, and as to those matters I believe them to be true.


Nathan Beard

Dated: June 5, 2023

80073971.v2